Mr. Les W. Burke County Attorney Bay County Post Office Box 1818 517 East Ninth Street Panama City, Florida 32401
Dear Mr. Burke:
This is in response to your request for an opinion on substantially the following question:
 WHETHER THE SPECIAL LAW ENFORCEMENT TRUST FUND AS ESTABLISHED BY s 932.704, F.S. (1982 SUPP.), CAN BE USED TO HIRE A PHYSICIAN'S ASSISTANT AS AN INDEPENDENT CONTRACTOR TO RENDER MEDICAL SERVICES TO PRISONERS AT THE COUNTY JAIL.
Your question is answered in the negative.
I assume that by use of the term "physician's assistant" you are referring to an individual providing medical services as authorized and regulated by Ch. 458, F.S. I would note initially that it is questionable that a "physician's assistant" may lawfully and independently contract to perform or render the medical services under these circumstances. If by use of the term "physician's assistant" you have reference to the "physician's trained assistant" mentioned in s 458.303(2), F.S., such trained assistants are required to render their services under the direct supervision and control of a licensed physician. If you are referring to the "physician's assistant" provided for in s458.347, F.S., such assistant may render medical services only: (a) in the office of the physician to whom the assistant has been assigned, where the physician maintains his primary practice; (b) when the physician to whom he is assigned is present; (c) in a hospital or clinic where the physician to whom he is assigned is a member of the staff; or (d) on calls outside the physician's office on the direct order of the physician to whom the assistant is assigned. See, ss 459.002(2) and 459.022(3), F.S., similarly providing for osteopathic physician's trained assistants and osteopathic physician's assistants respectively. See also, Rule 33-8.07(18), F.A.C., applicable to medical services rendered in county detention facilities, which provides that "[s]tate licensure and/or certification requirements and restrictions shall apply to health care personnel working in the [county detention] facility the same as those working in the community; copies of licensing and/or certification credentials shall be on file in the facility."
Concerning the use of the funds for such a medical service program, s 932.704(3)(a), F.S. (1982 Supp.), provides, among other things, that the proceeds remaining from the sale of any forfeited property after satisfying statutorily prescribed liens and costs "shall be deposited in a special law enforcement trust fund established by the board of county commissioners . . . and shall be used for law enforcement purposes only." (e.s.) The meaning of the phrase "law enforcement purposes only" is illuminated by the following sentence of this subsection. "These funds may be expended only upon appropriation to the sheriff's office or police department, by the board of county commissioners . . . to defray the costs of protracted or complex investigations, to provide additional technical equipment or expertise, to provide matching funds to obtain federal grants, or for such other law enforcement purposes as the board of county commissioners . . . deems appropriate and shall not be considered a source of revenue to meet normal operating needs." (e.s.) Further, s 932.704(5), F.S., provides that "[n]either the law enforcement agency nor the entity having budgetary control shall anticipate future forfeitures or proceeds therefrom in the adoption and approval of the budget for the law enforcement agency." In AGO 81-99, among other things, this office concluded that as provided in the statute, funds in the special law enforcement trust fund "may not be used as a source of revenue to meet normal operating needs of the sheriff's office." It therefore appears that the legislative intent of s932.704, F.S., is that these trust funds should be used only for the expressly specified purposes or for other extraordinary programs and purposes, beyond what is usual, normal, regular or established. As discussed below, furnishing medical attention, care, and treatment to county prisoners is an ongoing, normal or regular duty and function of the sheriff's office, and thus, is a part of the normal cost of the operation of the county jail. See also, AGO's 75-194, 75-35, 72-346.
It is clear that the sheriff has an ongoing responsibility to provide medical services to prisoners incarcerated in county detention facilities. Section 951.23(2), F.S., authorizes and directs the Department of Corrections to adopt rules and regulations prescribing standards and requirements for county detention facilities with reference to the maintenance and operation of such detention facilities and he furnishing to county prisoners of medical attention and health and comfort items. "County detention facilities" is defined by subsection (1)(a) of s951.23, F.S., to mean, among other places, the county jail. Subsection (1)(b) of that statute defines the term "county prisoner" to mean "a person who is detained in a county detention facility by reason of being charged with or convicted of either felony or misdemeanor." Subsection (3) of s 951.23 requires the Department of Corrections to enforce such rules and regulations, and empowers that department to obtain injunctions prohibiting the confinement of any county prisoner in a county detention facility which does not meet such standards and requirements. Rule 33-8.07, F.A.C., implements s 951.23, F.S., and, in pertinent part, provides that the officer-in-charge of a county detention facility will execute an agreement in writing, if at all possible, for appropriate care and the services of a physician licensed in the State of Florida. Rule 33-8.07(1), F.A.C. Subsection (6) of the rule requires each facility to have an agreement or understanding with one or more health care providers to provide services either at the facility or at the location of the health care provider. Subsection (2) of the rule requires a standard operating procedure for the medical section of the detention facility which includes receiving *3217 screening, physical examinations, and necessary medical, dental and mental health services. See also, subsections (3) and (5) of Rule 33-8.07. Subsection (9) of this administrative rule requires every county detention facility to provide each prisoner with the opportunity for daily sick call supervised by the facility physician or his designee. And see, subsections (12), (17), and (18) of Rule 33-8.07.
Section 951.23, F.S., and Rule 33-8.07, F.A.C., should be read in pari materia with s 30.49, F.S. (1982 Supp.) in reaching an understanding of the nature of the budgetary process for providing medical treatment and services to county prisoners. Section30.49(1), F.S., requires the sheriff to certify to the board of county commissioners a proposed budget of expenditures for carrying out the powers, duties and operations of the sheriff's office for the ensuing fiscal year of the county. Each proposed budget is required to show, among other things, all proposed expenditures for operating and equipping the sheriff's office and jail, other than construction, repair or capital improvement of county buildings during the ensuing fiscal year, and to divide the budget and expenditures into categories, including one for expenditures anticipated to be incurred in the maintenance and operation of local correctional facilities and detention alternative facilities. See, s 30.49(2), F.S. The sheriff's budget, as approved by the board of county commissioners, must include, among other things, the cost of operating the county jail. Section 30.49(4), F.S. Construing s 30.49 with s 951.23 and Rule 33-8.07, F.A.C., it is readily apparent that the providing of medical care and services to county prisoners, as prescribed by Rule 33-8.07, is a continuing and ongoing responsibility of the sheriff and the expenses thereof are an integral part of the cost of operating the sheriff's office and the county jail for which sufficient funds to cover the expected cost of such medical care and services should be budgeted in the annual operating budget of the sheriff's office.
Based on the foregoing laws, administrative rule and Attorney General Opinions, I therefore conclude that the board of county commissioners is not authorized by s 932.704, F.S. (1982 Supp.), read with s 30.49, F.S. (1982 Supp.), s 951.23, F.S., and Rule 33-8.07, F.A.C., to fund the costs of providing medical care and services to county prisoners at the county jail from the special law enforcement trust fund established pursuant to s932.704(3)(a), F.S. (1982 Supp.). Furnishing medical attention and treatment to county prisoners is a continuing and ongoing or regular duty and function of the sheriff's office which is a normal operating cost of the county jail for which s 932.704 does not countenance the use of the funds from the special law enforcement trust fund.
Sincerely,
Jim Smith, Attorney General
Prepared by: Craig Willis, Assistant Attorney General